IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTHONY L. CAREY, #152763,          )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )        CASE NO. 2:07-CV-1106-MHT
                                    )
BILL WYNN, et al.,                  )
                                    )
        Defendants.                 )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

In this 42 U.S.C. § 1983 action, Anthony L. Carey ["Carey"], a state inmate,

challenges the constitutionality of the decision to deny him parole issued by the Alabama

Board of Pardons and Paroles on March 28, 2007.  The defendants remaining in this cause

of action are Bob Riley, Governor of the State of Alabama at the time of the actions about

which Carey complains, Troy King, the former Attorney General for the State of Alabama,

Miriam Shehane, a member of Victims of Crimes Against Leniency, and Bill Wynn,

Velinda Weatherly and Robert Longshore, members of the Alabama Board of Pardons and

Parole.  Carey requests imposition of "declaratory and injunctive relief" regarding the

constitutionality of Alabama's parole procedures "that would render invalid Alabama's

procedures used to deny (i) parole eligibility, and/or (ii) parole suitability in accord with

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) holdings...."  *Plaintiff's Complaint Court Doc.*

No. 1 at 4.[1]  Carey also seeks "an immediate parole hearing" absent utilization of the challenged parole procedures.  *Id*.

The defendants filed special reports, supported by relevant evidentiary materials, addressing Carey's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as motions for summary judgment.  *Order of June 18, 2008 - Court Doc. No. 41*; *Order of August 18, 2008 - Court Doc. No. 57*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of such motions, the evidentiary materials filed in support thereof and Carey's responses in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no

---

[1]In *Wilkinson*, two state prisoners brought claims seeking relief that would "render invalid the state procedures used to deny parole eligibility ... and parole suitability...."  544 U.S. at 82.  The Court held that these claims were "cognizable under § 1983, i.e., they do not fall within the implicit habeas exception[]" because neither of the claims for relief "would necessarily spell speedier release...."  *Id*.  Thus, the relief sought by Carey in his complaint is properly before this court in a 42 U.S.C. § 1983 action.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant

_____

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Carey is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory

allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant.

*United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a

6

genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Carey fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III.  FACTS

In February of 1989, the Circuit Court of Jefferson County, Alabama (Bessemer Division) sentenced Carey to thirty years imprisonment on a murder conviction. *Plaintiff's Exhibit A to the Response in Opposition - Court Doc. No. 63-3* at 1. At the time Carey filed the instant complaint, he had been considered for parole on four occasions during his incarceration but denied parole after each parole consideration hearing. The relevant decision to deny Carey parole occurred on March 28, 2007. The record demonstrates that the denial of parole occurred because Carey failed to persuade members of the parole board that he is an acceptable risk for release on parole. *Parole Defendants' Exhibits to the*

*March 19, 2008 Special Report - Court Doc. No. 25-2* at 2-5.

## IV.  DISCUSSION

Carey asserts the defendants violated his constitutional rights when they denied him parole and failed to conduct the 2007 parole consideration hearing within three (3) years of the most recent prior parole consideration.  Specifically, Carey complains the defendants (i) denied him due process, (ii) deprived him of equal protection, (iii) subjected him to cruel and unusual punishment, (iv) relied on false information, (v) circumvented the Ex Post Facto Clause, and (vi) conspired to effectuate the denial of parole.  *Plaintiff's Complaint - Court Doc. No. 1* at 2-3.  Under applicable federal law, these claims entitle Carey to no relief from this court.

### A.  Due Process - The 2007 Hearing and Denial of Parole

Carey asserts defendants Wynn, Weatherly and  Longshore deprived him of "fair consideration" for parole in violation of his due process rights as the decision to deny parole arose from arbitrary and capricious actions.  *Plaintiff's Complaint - Court Doc. No. 1* at 3.  In support of this assertion, Carey complains the parole defendants denied him due process when they (i) failed to act in accordance with laws and regulations applicable to determining an inmate's suitability for release on parole, setting of parole consideration dates and scheduling of parole hearings, (ii) set-off his parole consideration date based on a regulation enacted after entry of his conviction, (iii) considered adverse information

8

provided by the victim's family without verifying the information, (iv) did not allow him to attend the hearing, (v) denied his family the opportunity to explain the facts surrounding the murder, and (vi) utilized statutes and regulations enacted after his date of conviction in the parole consideration process Carey's claims arising from an alleged lack of due process with respect to the parole consideration process and resulting denial of parole entitle him to no relief.

"The Alabama [parole] statute ... calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination.  It does not contain any language that mandates parole....  When the statute is framed in discretionary terms there is not a liberty interest created....  Alabama parole statutes do not create a liberty interest [in parole]...."  *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).  This court's exhaustive review of the history of the Alabama statute governing release on parole establishes that from its inception the statute has been framed in discretionary terms.[3]  The law is well settled that "the mere possibility of parole provides

---

[3] Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society....

*Ala. Code* § 15-22-26.

9

simply 'a hope that is not protected by due process....' ... [In addition], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

Despite conceding no protected liberty interest in parole, Carey contends that the parole board's regulation governing parole set-off dates creates a protected liberty interest in the procedures related to parole consideration. Carey alleges that this provision creates a protectable expectancy in parole consideration at the requisite set-off time and, therefore, the consideration process must comport with due process. This claim is foreclosed by *Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940, 941-942 (11th Cir. 1982), in which the Eleventh Circuit deemed such a "unique theory ... without merit." 678 F.2d at 942. The relevant portion of the Court's opinion reads as follows:

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions ... create a protectable entitlement to parole consideration. Specifically, petitioner cites the requirement ... that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language ... that the board include in the parole file "as complete information as may be practically available...." If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards. Petitioner's unique theory is without merit. Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness. *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429

U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).  In *Staton v. Wainright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes. The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws.  The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive parole release date."  Accordingly, in the instant case petitioner['s] ... allegation that the ... parole board has not accorded him adequate parole consideration does not entitle him to [relief].

*Slocum*, 678 F.2d at 942.

Carey does not possess a liberty interest in being granted parole that is protected by the Due Process Clause of the Constitution.  *Heard v. Georgia State Board of Pardons and Paroles*, 222 Fed. Appx. 838, 840 (11th Cir. 2007); *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489.  Absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness."  *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to parole decisions.").  Thus, the procedural due process protections of the Fourteenth Amendment do not apply

to either the parole decision making process, *Thomas*, 691 F.2d at 488-489, or the parole consideration process. *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole rules or properly calculate presumptive date of release on parole does not constitute a violation of due process).

Moreover, to the extent the complaint can be construed to challenge the constitutionality of setting and/or delaying a parole consideration hearing past the time mandated by governing administrative regulations, such action likewise does not run afoul of the Constitution.   Federal courts no longer ascertain whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion" but must instead look to the nature of the deprivation to determine if a state created a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995).  As previously noted, an Alabama inmate has no liberty interest in parole protected by the Due Process Clause.  Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,]... these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*.  "Since an

inmate is normally incarcerated in prison, [the plaintiff's remaining in prison while awaiting parole consideration] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489.  The parole defendants maintain they acted in accordance with state law and applicable administrative regulations when scheduling Carey's 2007 parole consideration hearing and denied parole to Carey because they were not persuaded he presented an acceptable risk for release on parole.  The decisions of the parole board members with respect to Carey demonstrate reasonable and appropriate actions, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988).  Carey has therefore failed to present any evidence indicating arbitrary or capricious actions on the part of the Alabama Board of Pardons and Paroles or its board members.  Consequently, summary judgment is due to be granted in favor of the defendants with respect to each of Carey's due process claims.

## B.  Equal Protection

Carey, an African American inmate convicted of murder, asserts the defendants violated his right to equal protection by denyig him parole when other inmates convicted of murder and/or more serious crimes have been granted parole.  *Plaintiff's Complaint - Court Doc. No. 1* at 3; *Plaintiff's Response in Opposition - Court Doc. No. 63* at 6-7.  He further contends that "white inmates are more likely to make parole" than are black inmates.  *Plaintiff's Response in Opposition - Court Doc. No. 45* at 5.

To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)."  *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ...

selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  In a case such as this one, where the plaintiff challenges actions of parole officials, exceptionally clear proof of discrimination is required.  *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Carey bears the burden of producing evidence which would be admissible at trial sufficient to show that the action of the defendants resulted from intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279.  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment).  Instead, the law is clear that the plaintiff must present

15

significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendants. *Anderson*, 477 U.S. at 249.

The defendants adamantly deny they undertook any action in Carey's parole consideration process based on race or any other constitutionally impermissible reason. *Parole Defendants' Exhibits to the March 19, 2008 Special Report - Court Doc. No. 25-2* at 2-5. In addition, the defendants maintain that the denial of parole was based solely on their determination that Carey was not suitable for release on parole. *Id*. Carey has utterly and completely failed to present evidence, significantly probative or otherwise, that race or some other constitutionally impermissible factor constituted a motivating factor in the actions of the defendants about which he complains. Other than Carey's self-serving, conclusory allegation that the defendants violated his equal protection rights, the record is devoid of admissible evidence that the defendants acted in an intentionally discriminatory manner. The allegations presented by Carey do not warrant an inference of discriminatory intent as the showing of a disparate impact upon inmates is insufficient to demonstrate an equal protection violation. *Sweet*, 467 F.3d at 1319; *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994). Moreover, the arbitrary application of administrative rules and/or state laws does not constitute a violation of the Constitution. *E & T Realty*, 830 F.2d at 1114. Carey has therefore not been denied equal protection of the law with respect to the denial of parole.

Thus, the defendants are entitled to summary judgment on the equal protection claim.

### C.  Cruel and Unusual Punishment

Carey contends the decision to deny him parole constituted cruel and unusual punishment.  *Plaintiff's Complaint - Court Doc. No. 1* at 3.  The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  *Rhodes v. Chapman*, 452 U.S. 337 (1981).  Only actions which deny an inmate "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment's prohibition against cruel and unusual punishment.  *Id*. at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991).  Neither a delay of parole consideration nor the denial of parole rises to the level of an Eighth Amendment violation as either action is "merely a disappointment rather than a punishment of cruel and unusual proportions." *Damiano v. Florida Parole and Probation Commission*, 785 F.2d 929, 933 (11th Cir. 1986). Summary judgment is therefore due to be granted in favor of the defendants on this claim.

### D.  False Information

Carey complains the defendants deprived him of due process when they relied on false information to deny him parole.  *Plaintiff's Complaint - Court Doc. No. 1* at 3 (emphasis in original) (parole board members based their decision to deny parole "upon ***erroneous - false information*** {'that I have violent behavioral problems'}....").  The defendants do not admit the information utilized in the parole decision-making process is

false and categorically deny any knowing reliance on false information. *Parole Defendants' Exhibits B and C to the June 17, 2008 Second Supplemental Special Report -- Court Doc. No. 40-1* at 2-5.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution. The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id.* In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442. *Slocum* controls the disposition of the instant false information claim.

The defendants maintain the information on which they relied to deny Carey parole is correct and reliance on this information therefore did not violate the plaintiff's constitutional rights. Specifically, there is no admission by the defendants that the information utilized in denying Carey parole is false, incorrect or erroneous. Carey has failed to come forward with any evidence which indicates the defendants knowingly used false information during the parole consideration process. Moreover, Carey's conclusory assertion regarding false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11ᵗʰ Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record in this case establishes that the defendants did not rely on ***admittedly*** false information in their decision to deny Carey parole. Consequently, the plaintiff is entitled to no relief as a matter of law and entry of summary judgment in favor of the defendants is appropriate.

### E.  Ex Post Facto Application of Consideration Guidelines

Carey contends the parole board's revised rule requiring that an initial parole

19

consideration date be set upon completion of 85% of a prisoner's total sentence or fifteen (15) years, whichever comes first, is violative of his constitutional rights.  Carey also maintains the defendants violated his constitutional rights when they retroactively applied applicable administrative rules, which altered the frequency of parole consideration dates from every three years to every five years, in setting his 2007 parole consideration date.

     **1.  <u>The Initial Consideration Date</u>**.  Carey asserts that, at the time the trial court imposed sentence upon him, the rules of the Alabama Board of Pardons and Paroles entitled him to parole consideration after serving ten years (10) or one-third of his sentence, whichever is lesser.  The administrative regulation at issue, which the parole board revised in 2001 and amended in 2004, extends the date of an initial parole consideration for individuals such as Carey who have been convicted of a Class A felony to completion of 85% of the prisoner's sentence or fifteen years (15) years imprisonment, whichever is lesser.  *Respondents' Exhibit C to the August 4, 2008 Response to Discovery Request - Court Doc. No. 52-3* at 4-5 -- *Alabama Board of Pardons and Paroles Rules, Regulations and Procedures*, Article I, § 7.  Carey advises his "first parole hearing was January 1, 1999."  *Plaintiff's Response in Opposition - Court Doc. No. 63* at 10.  This initial parole consideration hearing was held within the time required by the rules and regulations in effect at the time of Carey's murder conviction.  Thus, the revised rule did not affect the scheduling of Carey's initial parole consideration.  In light of the foregoing, Carey lacks

standing to challenge any amendment to the parole board's administrative regulations concerning the scheduling of his initial parole consideration date and summary judgment is due to be granted in favor of the defendants with respect to this claim.

    **2.  The Frequency of Reconsideration**.  Carey complains that set-off of his parole consideration date for a potential of five years upon retroactive application of amended administrative regulations is unconstitutional because prior regulations allowed parole consideration at more frequent intervals.  This allegation implicates the protections guaranteed by the Ex Post Facto Clause and the court therefore construes the claim as one arising under this provision of the Constitution.

    The Ex Post Facto Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission."  *Garner v. Jones*, 529 U.S. 244, 249 (2000).  An amended law or regulation must create a significant risk of increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision.  *Garner,* 529 U.S. at 255.  Decisions with respect to whether a parole regulation violates the Ex Post Facto Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis.  *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000).  In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his

assertion that the regulation "'as applied to his sentence,' created a significant risk of increasing his punishment." *Harris*, 217 F.3d at 1350 (quoting *Garner v. Jones,* 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000)); *Jones v. Ray*, 279 F.3d 944, 946 -947 (11th Cir. 2001).

In *Garner*, the Court addressed whether an amended rule increasing parole consideration hearings from every three years to every eight years in Georgia violated the Ex Post Facto Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstances or new information. *Garner*, 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of ex post facto legislation is often a question of particular difficulty when the discretion vested in the parole board is taken into account. *Id.* at 249. In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations. *Id.* at 254. "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience." *Id.* at 253.

Alabama law gives the Alabama Board of Pardons and Paroles broad discretion in determining whether an inmate should be granted parole, *see* § 15-22-26*, Ala.Code 1975*, "and when and under what conditions" parole will be granted, § 15-22-24(a), *Ala. Code.* Applicable state law also requires that the parole board consider the public interest in every case. *Ala. Code* § 15-22-26. This unconditional discretion, however, does not displace the protections of the Ex Post Facto Clause. *Garner*, 529 U.S. at 250. The proper inquiry in cases challenging retroactive application of new parole policies or statutes is whether the retroactive change creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id*. (internal quotation marks and citation omitted).

The rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama Board of Pardons and Paroles. In 2001, the parole board adopted the rules and regulations applicable to the claims presented in this case. The board amended these rules and regulations in 2004. Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*, vests the Board with discretion to determine whether to set the case for reconsideration and, if reconsideration is allowed, "when the case shall next be docketed for consideration, not to exceed five (5) years."[4] *Parole Defendants' Exhibit C to the August 4, 2008 Response - Court Doc. No.*

---

[4]The initial operating procedure governing the scheduling of parole consideration dates, *Ala. Adm. Code* § 640-X-2.02(8)(1982, revised 1986), provided that upon denial of parole to an inmate "the Board will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial." *Parole Defendants' Exhibit A to the August 4, 2008 Response - Court Doc. No. 52-1* at 7. The increase in the reset date from no "more than three years" from denial of parole to the current

*52-3* at 11.   Article 2, § 7, provides that, if the Board "scheduled the next consideration three years or more after denial [of parole] ...., the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen months after the Board has denied or revoked parole."[5]   *Id*. at 6.   The opportunity for an expedited parole review is likewise available to qualified inmates.   Article 2, § 1, provides that "[s]uch a rescheduling may be granted only for good cause shown and circumstances bearing on [the inmate's] probability to succeed on parole, not merely because the prisoner is following the rules in prison."   *Id*.   Thus, the rule changes are designed to facilitate better exercise of the Board's discretion.   *Garner*, 529 U.S. at 254-255.

It is clear that the law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Carey nor increase the level of risk that he will serve a longer term of imprisonment.   Specifically, prior to this change, the parole board never guaranteed Carey that he would be unconditionally released before completion of his thirty-year sentence.   Additionally, eighteen months after a denial of parole Carey has the opportunity under the current

---

five-year maximum originally occurred in adoption of the 2001 rules and regulations at Article 6, § 11. *Parole Defendants' Exhibit B to the August 4, 2008 Response - Court Doc. No. 52-2* at 8.   The parole board retained the five-year set off in its 2004 amendments.   *Parole Defendants' Exhibit C to the August 4, 2008 Response - Court Doc. No. 52-3* at 11.

[5]The 2001 amendment to the regulation in Article 2, § 8 allowed the "earlier scheduling" of parole consideration twenty-four months, rather than eighteen months, after the denial of parole.   *Parole Defendants' Exhibit B to the August 4, 2008 Response - Court Doc. No. 52-2* at 5.

24

regulation to submit information about changed circumstances bearing on his suitability for parole and could be scheduled for consideration at an earlier date.  Hence, even if risk of an increased term of incarceration develops in Carey's case, he may, upon a showing of "good cause ... and circumstances bearing on his probability to succeed on parole," seek an earlier review before the 5-year interval expires.  Article 2, § 1, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*; *Parole Defendants' Exhibit C to the August 4, 2008 Response - Court Doc. No. 52-3* at 6.

Carey has presented no evidence and the court is unaware of any evidence which demonstrates that the regulations at issue create a significant risk of increased punishment for Carey.  Moreover, Carey possesses the ability to petition the parole board for an earlier parole consideration date.  Based on the foregoing, the court concludes that the change about which Carey complains did not lengthen his actual term of imprisonment.  Thus, Carey's challenge to the potential increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.  *Garner*, 529 U.S. at 253-256; *Olstad v. Collier*, 326 Fed.Appx. 261 (5th Cir. 2009) (retroactive imposition by parole board of changes in Texas parole policy allowing a potential five year set-off until prisoner's "next parole review presents no ex post facto violation because its effect on increasing [plaintiff's] punishment is merely conjectural....  The Board is vested with discretion as to how often to set [plaintiff's] date

25

for reconsideration, with five years for the maximum; the Board is also permitted to adjust subsequent review dates and conduct a special review if [plaintiff's] status changes."); *Creel v. Kyle*, 42 F.3d 955, 957 (5th Cir.), *cert. denied*, 514 U.S. 1070, 115 S.Ct. 1706 (1995) (change in rules that lengthen period of time between parole reconsideration hearings applied retroactively by parole board not violative of the Ex Post Facto Clause). The defendants are therefore entitled to summary judgment on this claim.

## F. Conspiracy

Carey alleges defendants Riley, King and Shehane engaged in a conspiracy with defendants Wynn, Weatherly and Longshore which resulted in the denial of parole.[6] "Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks,* 449 U.S. at 27, 101 S.Ct. at 186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir.1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong

---

[6]Ms. Shehane is a private citizen who acts as an advocate for VOCAL, a private association devoted to the protection of victims' rights and unaffiliated with any state agency. Carey argues Ms. Shehane was transformed into a state actor because she conspired with other state actors to deprive him of his constitutional rights. *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 186 (1980) ("[T]o act under color of state law for (Section) 1983 purposes does not require that the Defendant be an officer of the State. It is enough that [she] is a willful participant in joint action with the State or its agents."). However, "[f]or purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons. *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)." *Harvey v. Harvey*, 949 So.2d 1127, 1133 (11th Cir. 1992).

to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement...." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants....  For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'  *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)."  *Rowe*, 279 F.3d at 1283-1284.  Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy.  *Harvey*, 949 F.2d at 1133.

The parole defendants deny they conspired with any other party to violate Carey's constitutional rights and, instead, argue they acted appropriately at all stages of the parole consideration process.  Defendants Riley, King and Shehane likewise deny acting in concert with members of the parole board or each other to deny Carey his constitutional rights.  The court has carefully reviewed the pleadings filed by the plaintiff.  There is a total lack of evidence to support Carey's suppositious theory that the defendants engaged in various conspiratorial acts against him.  Specifically, Carey has failed to present any

evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468.   At best, Carey's assertions are self-serving, purely conclusory allegations which fail to assert those material facts necessary to sufficiently plead a conspiracy between the defendants. *Harvey*, 949 F.2d 1133; *Fullman*, 739 F.2d at 556-557.   Thus, Carey has failed to produce any probative evidence of a conspiracy and the motions for summary judgment filed by the defendants are due to be granted regarding this claim. *Bailey*, 956 F.2d at 1122.

## G.  State Law Claims

Carey contends the parole defendants "have acted, or omitted to act" in accordance with state law in denying him release on parole. *Plaintiff's Complaint - Court Doc. No. 1* at 3.   To the extent Carey asserts that the actions of the defendants violated state law, review of these claims is appropriate only upon exertion of this court's supplemental jurisdiction.   In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact."'" *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d

414, 427 (11ᵗʰ Cir. 1984).   The exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims."  *L.A. Draper and Son*, 735 F.2d at 428.  In view of this court's resolution of the federal claims presented in the complaint, Carey's pendent state claims are due to be dismissed.  *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11ᵗʰ Cir. 1982).[7]

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

---

[7]Alabama law vests complete discretion in the Alabama Board of Pardons and Paroles "of determining what prisoners may be released on parole and when and under what conditions" parole will be granted.  § 15-22-24(a), *Alabama Code*.  The law further gives the parole board total discretion in determining whether an inmate should be granted parole.  § 15-22-26*, Ala.Code* (A prisoner shall not be released on parole unless "the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society...."). The Alabama parole statutes governing standards for parole of inmates are typical parole statutes which vest absolute discretion in the Alabama Board of Pardons and Paroles.  *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489.  The Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Board and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."  *Thomas*, 691 F.2d at 489.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before February 15, 2011 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down

prior to the close of business on September 30, 1981.

Done this 31st day of January, 2011.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE